UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

COUNTRY     CLUB     DRIVE
ASSOCIATES, LLC,

                              Plaintiff,

                    v.

CLINTON   TOWNSHIP   SEWERAGE
AUTHORITY;     TOWNSHIP     OF
CLINTON; GREGORY WATTS, ESQ;
WATTS,    TICE   &   SKOWRONEK;
NORTH     HUNTERDON-VOORHEES
REGIONAL HIGH SCHOOL DISTRICT;
NORTH     HUNTERDON-VOORHEES
REGIONAL HIGH SCHOOL DISTRICT
BOARD    OF    EDUCATION;   MOTT
MACDONALD, INC.
                              Defendants.

Before: Leo M. Gordon, Judge

Court No. 3:19-cv-20525

**OPINION and ORDER**

[Motion to dismiss for failure to state a claim granted in part and denied in part.]

Dated: June 17, 2024

<u>Daniel B. Tune</u>, Tune Law Group, LLC, of Whitehouse Station, NJ for Plaintiff Country Club Drive Associates, LLC.

<u>Jeffrey S. Leonard</u>, Lewis Brisbois Bisgaard & Smith, LLP, of Newark, NJ for Defendants Gregory Watts and Watts, Tice & Skowronek.

        Gordon, Judge[1]: In this action, Plaintiff Country Club Drive Associates, LLC

("CCD") brings claims against the township of Clinton ("Clinton"), its municipal sewer

authority ("CTSA"), and various third parties allegedly involved with or having benefitted

---

[1]  The Honorable Leo M. Gordon, Judge of the United States Court of International Trade, sitting by designation.

from the taking of Plaintiff's rights to send 250,000 gallons per day ("GPD") of wastewater to a treatment facility located in the neighboring town.  See Am. Compl., ECF No. 43. Included among the third-party defendants are Gregory Watts and the law firm Watts, Tice & Skowronek, (collectively, the "Watts, Tice Defendants") that served as legal counsel for the CTSA during the period relevant to this litigation.  Id. at ¶¶ 5–8.

The Watts, Tice Defendants move to dismiss the various claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. See Watts, Tice Defs.' Mot. to Dismiss, ECF No. 62 ("Defs.' Mot."); see also Pl.'s Opp'n to Watts, Tice Defs.' Mot. to Dismiss, ECF No. 74 ("Pl.'s Opp'n"); Watts, Tice Defs.' Mot. to Dismiss Reply, ECF No. 80 ("Defs.' Reply").  For the following reasons, the Watts, Tice Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim is granted in part and denied in part.

## I. Background

Clinton does not own a wastewater treatment facility or sewage treatment plant. See Am. Compl. ¶ 22.  Instead, since the 1970's, Clinton has entered into agreements with the neighboring town for wastewater treatment services.  Id.  Various third parties, including Plaintiff, were independent owners of the right to send wastewater to the neighboring town's wastewater treatment facility.  Id.  Since at least 2007, CCD, Clinton, and the CTSA have engaged each other in various legal actions in both state and federal court involving certain sewerage capacity rights conveyed to CCD in 1978 for the development of a condominium/multi-use development known as Beaver Brook.

See Defs.' Mot. at 1.  In this action, the most recent suit arising from this longstanding dispute, CCD advances 16 separate causes of action based on 134 paragraphs of allegations that crisscross over the 40-plus year history of the Beaver Brook development. Id.  In February 2023, Plaintiff filed an amended complaint adding claims against the Watts, Tice Defendants, among others.[2]  See Am. Compl.

Specifically, the first four counts of Plaintiff's Amended Complaint allege unlawful takings and seizures under the Federal and New Jersey state constitutions.  Id. at ¶¶ 151-168.  Plaintiff's fifth and sixth counts seek judicial declarations that defendant government entities are acting unlawfully by "seizing" sewage capacity owned by CCD without "just compensation."  Id. at ¶¶ 169–176.  CCD's seventh and eighth counts are specifically directed against Clinton and the CTSA, alleging that they breached their contract (and implied covenant of good faith and fair dealing) with Plaintiff.  Id. at ¶¶ 177-185.

From the ninth through the 16th counts, Plaintiff's claims start to be generally alleged against all defendants, and include broad allegations of liability.  See id. at ¶¶ 186–189 (Count IX alleging all defendants "maliciously interfered with CCD's right to pursue its business with the public"); id. at ¶¶ 190–194 (Count X alleging that all defendants "owed fiduciary duties to CCD in light with the contracts between [the CTSA],

---

[2] Plaintiff's Amended Complaint also alleged professional negligence and other claims against the CTSA's consulting engineering firm.  See, e.g., Am. Compl. ¶¶ 12–16.  Those claims, which are the subject of a different motion to dismiss, are addressed in a separate opinion.  See Opinion on Mott MacDonald, Inc.'s Motion to Dismiss, ECF No. 105.

[Clinton], and CCD," and that all defendants "breached said fiduciary duties"); id. at ¶¶ 195–200 (Count XI alleging fraud by Defendants); id. at ¶¶ 201–204 (Count XII alleging negligent misrepresentation as an alternative to fraud); id. at ¶¶ 205–208 (Count XIII alleging that "Defendants wrongfully exercised dominion and control over money and other personal property belonging to Plaintiff CCD"); id. at ¶¶ 209–211 (Count XIV alleging unjust enrichment against Defendants as an alternative to breach of contract claims).  Of particular relevance for the present motion is Count XV, in which Plaintiff specifically alleges that the Watts, Tice Defendants engaged in professional negligence and violated their duty of care to Plaintiff.  Id. at ¶¶ 212–215.  Lastly, in Count XVI, Plaintiff alleges a claim for "inverse condemnation" against the "government agency Defendants."  Id. at ¶¶ 216–221.

Given the above, the court's disposition of the pending motion to dismiss focuses on Counts I through IV, IX, and XI through XV as those are the claims that are directed against the Watts, Tice Defendants.

## II. Standard of Review

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court assumes all factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. See Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017).  A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 566 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555 (2007)).  Therefore, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

In addition to the complaint itself, the court may also review "exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d. Cir. 2004).  A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. Discussion

The Watts, Tice Defendants provide a count-by-count recitation as to why Plaintiff's Amended Complaint fails to state a claim and should be dismissed. See generally Defs.' Mot.  The court will address Watts, Tice Defendants' arguments in the order in which they were presented.

### A. Count XV – Professional Negligence

As to Count XV, the Watts, Tice Defendants contend that "Plaintiff cannot sustain a claim of professional negligence against [them] because no duty of care was owed to

Plaintiff."  Id. at 7.  They maintain that to recover on a professional negligence/legal malpractice claim against an attorney, Plaintiff must establish: (1) the existence of an attorney-client relationship, (2) a duty of care upon the attorney, (3) breach of that duty, and (4) proximate causation of damages.  Id. at 7 (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)).  Plaintiff concedes that "[t]here is no direct attorney-client relationship between Plaintiff, and the attorney/law firm defendants."  Pl.'s Opp'n at 8.  Nevertheless, Plaintiff maintains that the Watts, Tice Defendants owed it a duty of care because its contractual arrangement with the CTSA qualified as a "public-private partnership" that imposed certain duties on the CTSA, and by extension, its attorneys and agents.  Id. at 9–16.

The Watts, Tice Defendants concede that "[e]ven when there is no express or implied attorney-client relationship, an attorney may owe a duty of care to a non-client.  However, that duty is only imposed when the attorney knows, or should know, that the non-client will rely on the attorney's representations and the non-client is not too remote from the attorney to be entitled to protection."  Defs.' Mot. at 7–8 (citing Petrillo v. Bachenberg, 139 N.J. 472, 483–84 (1995)).  The Watts, Tice Defendants emphasize that a judicial determination of whether an attorney's duty extends to a non-client:

> involves the balance of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

Id. at 8 (quoting Albright v. Burns, 206 N.J. Super. 625, 633 (App. Div. 1986)).   They maintain that "courts in evaluating whether an attorney should be held liable to a non-client have only extended such a duty of care under limited circumstances."   Id.

The Watts, Tice Defendants also argue that the common theme of cases in which attorneys were found to have a duty towards non-clients was the "reliance of the non-clients upon some representation made by the attorney."   Id. at 9.   Here, by contrast, the Watts, Tice Defendants insist that there are no allegations of reasonable reliance by Plaintiff on representations by them.   Additionally, because Plaintiff was represented by independent legal counsel, the Watts, Tice Defendants contend that Plaintiff could not have reasonably relied upon advice from them because they were counsel to the CTSA, and not Plaintiff.   Id.   They therefore conclude that Count XV must be dismissed as Plaintiff cannot plausibly allege that the Watts, Tice Defendants violated a duty of care to Plaintiff.

Plaintiff maintains that this reliance argument lacks merit.   Plaintiff argues that its claim does not depend on any alleged misrepresentations made by the Watts, Tice Defendants to Plaintiff, but rather hinges on alleged misrepresentations made by those Defendants to third-parties.   See Pl.'s Opp'n at 19 (explaining that "[l]iability arises because inaccurate material statements were made to third parties (and/or not made to Plaintiff) such that third parties were either permitted to connect to Plaintiff's lines without Plaintiff's notice or consent, or to use Plaintiff's capacity without permission.").   Critically,

Defendants fail to dispute that Plaintiff satisfied the reliance element when it alleged that third-parties relied upon the Watts, Tice Defendants' misrepresentations.  See generally Defs.' Reply at 3–5.  Therefore, the court will not dismiss Count XV at this time.

### B. Litigation Privilege – Application to All Counts

The Watts, Tice Defendants next argue that the "litigation privilege" bars all of Plaintiff's claims against them.  See Defs.' Mot. at 10–16.  "Under the litigation privilege a 'statement made in the course of judicial, administrative or legislative proceedings is absolutely privileged and wholly immune from liability.'"  Id. at 10 (quoting Ruberton v. Gabage, 280 N.J. Super. 125, 132 (App. Div. 1995), cert. denied, 142 N.J. 451 (1995)).  The Watts, Tice Defendants maintain that "[t]he litigation privilege applies to communications that are made: (1) in judicial or quasi-judicial proceedings, (2) by litigants or other participants authorized by law, (3) to achieve the objects of the litigation and (4) have some connection or logical relation to the action." (citing Hawkins v. Harris, 141 N.J. 207, 216 (1995)).  "Whether a defendant is entitled to the privilege is a question of law."  Hawkins, 141 N.J. at 216.

Here, Plaintiff has attached to its Amended Complaint a transcript of a CTSA public board meeting from July 26, 2018.  See Am. Compl. Ex. 22.  Plaintiff quotes extensively from this meeting to support its allegations, particularly against the Watts, Tice Defendants.  Additionally, in response to the present motion to dismiss, Plaintiff quotes at length from a second CTSA public board meeting of May 5, 2016.  See Pl.'s Opp'n at 20–23, 23 n.22 (urging court to take judicial notice of quotations from transcript, noting

that court may consider such public records without converting motion to dismiss into motion for summary judgment).

The Watts, Tice Defendants argue that the statements they made in connection with those two CTSA hearings are protected by the litigation privilege, and thus, Plaintiff's claims should be dismissed.  See Defs.' Reply at 9 (noting that "litigation privilege is the general rule, not the exception," citing Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389, 402 (D.N.J. 2009)).

Plaintiff disputes the claim of "litigation privilege," noting that the claim is an affirmative defense under New Jersey law, which the Watts, Tice Defendants bear the burden of establishing in order to avoid liability.  See Pl.'s Opp'n at 25.  Plaintiff also maintains that it has raised claims beyond those that involve statements made at a public hearing.  See id. ("a review of the Amended Complaint, the preliminary statements, and the facts repeated herein reveal that liability attached long before any public hearing").

Plaintiff further argues that the litigation privilege cannot apply here because it has alleged that the Watts, Tice Defendants violated their duties through material omissions, and that "[b]ecause the litigation privilege covers statements, it is axiomatic that it does not cover silence."  Pl.'s Opp'n at 27.  As the Watts, Tice Defendants point out, Plaintiff does not provide any supporting citations for this broad claim.  See Defs.' Reply at 7.  Rather, it appears that Plaintiff's argument here is made in conjunction with Plaintiff's other argument that the litigation privilege cannot protect Defendants, namely that where "systemic fraud" is alleged the litigation privilege cannot prevent liability.  See Pl.'s Opp'n

at 30 ("[T]he attorney defendants have systematically made false and misleading statements to CCD as to its joint venture rights (extent of capacity and right [sic] withhold consent for sewer line hookups).  The Watts, Tice Defendants are also guilty of breaches by omission.  Thus, the litigation privilege does not apply.").

Plaintiff relies primarily on Williams v. BASF Catalysts LLC, 765 F.3d 306 (3d Cir. 2014) in which the court stated that "[t]he privilege has never applied to shield systemic fraud directed at the integrity of the judicial process."  Id. at 28 (quoting Williams, 765 F.3d at 317).  Plaintiff's reliance on Williams is misplaced, as the facts there are distinguishable from those in this action.  More generally, the case law does not support Plaintiff's claim that there is a fraud exception to the litigation privilege.  See Giles v. Phelan, Hallinan & Schmieg, L.L.P., 901 F. Supp. 2d 509, 526 (D.N.J. 2012) ("New Jersey courts have not applied a fraud exception to the litigation privilege").

Separately from Plaintiff's fraud exception argument, here, the Watts, Tice Defendants cannot demonstrate on the basis of the pleadings and their attachments that the litigation privilege should bar Plaintiff's claims.  It appears to the court that disputes of fact exist as to whether the Watts, Tice Defendants were acting as mere advocates for their client, and it is also unclear whether the CTSA hearing discussed at length by the parties can be described as a quasi-judicial proceeding.  Cf. Majer v. Township of Long Beach, Civ. No. 06-2919, 2009 WL 3208419 at *12 (D.N.J. Sept. 30, 2009) (rejecting claims of immunity based on litigation privilege and denying summary judgment due to disputed material underlying facts in support of the privilege claim).  The court finds Majer

instructive in light of its factual similarities to this action.  Given the contested nature of the CTSA hearings, as well as factual disputes regarding the full scope of conduct by the Watts, Tice Defendants, the court is unable to conclude that the litigation privilege applies to protect Defendants from liability.  Accordingly, the court will not grant the Watts, Tice Defendants' motion to dismiss on the basis of that privilege at this stage of the proceedings.

### C. Counts I–IV – Unlawful Takings and Seizures

The court next turns to the Watts, Tice Defendants' contention that they cannot be held liable with respect to Counts I through IV, namely Plaintiff's claims under 42 U.S.C. § 1983 and N.J.S.A. 10:6-1 et seq., because they did not serve as state actors "under color of state law" as is necessary to be liable under those provisions.  See Defs.' Mot. at 16–19; Defs.' Reply at 9–12.  The Watts, Tice Defendants rely on Polk County v. Dodson, 454 U.S. 312 (1981), which held that a private attorney representing a client "is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."  See Defs.' Mot. at 18 (quoting Polk, 454 U.S. at 318) (internal quotation marks omitted).  They urge the court to conclude that by applying Polk, Plaintiff cannot maintain that Defendants are liable as state actors for their private representation of the CTSA.  They also rely on A.V. v. Ashrafi, 2016 N.J Super Unpub. LEXIS 2381 (App. Div. Oct. 26, 2016), see ECF No. 62-1, at Ex. F, for the principle that "an attorney's mere representation of a government or a government employee does not make him or her a co-conspirator with a client."  See Ashrafi, ECF No. 62-1, at Ex. F, *15.

Plaintiff argues that Defendants' reliance on Polk is misplaced as it is an anomalous decision, namely, "the only case in which [the Supreme Court] has determined that a person who is employed by the State and who is sued under § 1983 for abusing his position in the performance of his assigned tasks was not acting under color of state law."    Pl.'s Opp'n at 30 (quoting West v. Atkins, 487 U.S. 42, 50 (1988)). Plaintiff maintains that it has met the plausibility standard by alleging that the Watts, Tice Defendants exceeded the scope of the traditional attorney-client relationship such that they could be considered state actors.  Id. at 33–35 (citing Majer v. Township of Long Beach, 2009 WL 3208419 at *9 (D.N.J. Sept. 30, 2009) ("It appears, however, that a municipality's attorney becomes a state actor by going beyond the traditional attorney-client relationship.")).

The Watts, Tice Defendants contend that Plaintiff's mere allegations that Watts was an agent of CTSA does not necessitate the implication that Watts was an "employee" of CTSA for purposes of Section 1983 liability.  See Defs.' Reply at 9–10.  Again, they urge the court to follow Polk and conclude that they were private counsel representing the CTSA and therefore outside the scope of Section 1983 liability as they were not acting "under color of law." Id. at 10–12.  While the court agrees with the Watts, Tice Defendants that they cannot be held liable under Section 1983 for actions taken within the scope of their private attorney-client relationship with the CTSA, the court cannot agree that they can prevail on this issue at this stage of the litigation.

There appears to remain a fundamental dispute of fact as to whether, in the course of the Watts, Tice Defendants' legal representation of the CTSA, they went beyond the bounds of the attorney-client relationship such that they were acting as policymakers on behalf of the CTSA.  See Pl.'s Opp'n at 11–12, 32–35.  Resolution of this issue requires further factual inquiry, and thus the granting of a motion to dismiss at this point in the litigation is inappropriate.  See Majer, 2009 WL 3208419 at *8–*11 (concluding that determination of whether attorney for municipality was acting "under color of state law" required resolution of disputed material facts such that summary judgment was inappropriate).  Accordingly, the court denies the Watts, Tice Defendants' motion to dismiss as to Counts I through IV.

### D. Count IX – Interference with Prospective Economic Advantage

In Count IX, Plaintiff alleges tortious interference with prospective economic advantage.  The Watts, Tice Defendants maintain that "[t]o establish such a cause of action, a plaintiff must demonstrate that (1) he had some reasonable expectation of economic advantage; (2) the defendant's actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage."  Defs.' Mot. at 19 (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751–52 (1989)).  They argue that "[e]ven if the Court were to determine this claim is not subsumed within Plaintiff's legal malpractice claim or barred

by the litigation privilege, it must still be found to fail.  There is nothing in the First Amended Complaint setting forth any allegations against the Watts, Tice Defendants which can be said to rise to the level of 'malicious.'"  See Defs.' Mot. at 20.

The Watts, Tice Defendants contend that without supporting factual allegations, the claim for tortious interference with prospective economic gain must fail because Plaintiff inadequately pled the element of "malice."  Id.  However, as Defendants' counsel acknowledged at oral argument, allegations of "malice" need only be made generally pursuant to Federal Rule of Civil Procedure 9(b).  See Oral Arg. Tr. at 58:11–59:2, ECF No. 103; see also Pl.'s Opp'n at 36 (citing Fed. R. Civ. P. 9(b)).  That Plaintiff did. Therefore, the court cannot agree with the Watts, Tice Defendants that Plaintiff failed to adequately allege malice to support a claim of tortious interference at this stage.  See Am. Compl. ¶ 188 ("Defendants maliciously interfered with CCD's right to pursue its business with the public."); contra Defs.' Reply at 13 (arguing that "Plaintiff has failed to even make any general allegations of malice against the Watts, Tice Defendants").  Thus, the motion to dismiss is denied as to Count IX.

### E. Count XI – Fraud and Count XII – Negligent Misrepresentation

Plaintiff's next two counts, Count XI (Fraud) and Count XII (Negligent Misrepresentation), are alleged in the alternative.  See Am. Compl. ¶¶ 195–204.  The Watts, Tice Defendants maintain that "[t]o establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it;

(4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  Defs.' Mot. at 20 (quoting <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (1997)). Defendants further note that "[r]eliance is an essential element of common-law fraud."  <u>Id.</u> (quoting <u>Byrne v. Weichert Realtors</u>, 290 N.J. Super. 126, 137 (App. Div. 1996), <u>cert. denied</u>, 147 N.J. 259 (1996)).

The Watts, Tice Defendants also contend that "[a] negligent misrepresentation constitutes '[a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance.'"  <u>Id.</u> at 21 (quoting <u>McClellan v. Feit</u>, 376 N.J. Super. 305, 317 (App. Div. 2005) (other citations omitted)).  They highlight that reliance is a core element of both claims, and contend that Plaintiff cannot establish that it plausibly relied on any misstatements by the Watts, Tice Defendants.  <u>Id.</u> at 20–22.

Plaintiff argues that it alleged at least two instances of detrimental reliance satisfying this element of its fraud and negligent misrepresentation claims.  Specifically, Plaintiff states that:

> As set forth in the First Amended Complaint, Watts provided affirmative misrepresentations and also failed to speak when he had a duty to do so.  CCD relied because it had a right to have its excess wastewater treatment capacity property rights 'established through accurate measure of actual flows and other such criteria as may be reasonably required by the Authority.'

Pl.'s Opp'n at 37 (quoting Am. Compl. ¶¶ 27, 36).  Plaintiff further suggests that another "instance of reliance to its detriment" occurred when "CCD entered into an incorrect stipulation dated September 1, 2005." Id. (citing Am. Compl. ¶ 97).

The Watts, Tice Defendants contend that these arguments cannot save Plaintiff's inadequately pled claims.  See Defs.' Reply at 15–17.  Instead, they argue that the referenced portions of the Amended Complaint demonstrate that Plaintiff could not have reasonably relied on any misrepresentations or omissions by the Watts, Tice Defendants. Id.  They maintain that such allegations fail to provide "the specifics required for fraud by F.R.C.P. 9(b)." Id. at 16.  Further, the Watts, Tice Defendants contend that Plaintiff's statement that it "relied upon the Authority's engineering figures" in entering into the September 1, 2005 stipulation indicates Plaintiff's admission that it did not rely on any representation by them. Id. at 16–17.

The court recognizes persuasive merit to some of the Watts, Tice Defendants' arguments, including that Plaintiff cannot plausibly allege that it "reasonably relied" on representations from those Defendants despite having maintained and received advice on the same issues from its own professional legal counsel.  See Defs.' Mot. at 9, 21.  But the Watts, Tice Defendants fail to demonstrate that Plaintiff's allegations are so deficient that dismissal at this stage is warranted.  Instead, as Plaintiff highlights, the Watts, Tice Defendants appear to concede that "[w]hile Plaintiff claims that Mr. Watts misrepresented the amount of GPD in excess wastewater it possesses, that is an open question which is the subject of this lawsuit."  Pl.'s Opp'n at 36 (arguing that this language, quoted from

Defs.' Mot. at 21, constitutes concession "that the court cannot decide this issue as a matter of law") (emphasis added).

Given this, the court cannot agree with Watts, Tice Defendants that Plaintiff inadequately pled its claims for fraud and negligent misrepresentation. Further, the court cannot say with certainty that Plaintiff's claimed reliance lacks plausibility. The court notes that Plaintiff will face a high bar in establishing the merits of its allegations, but at this early stage of the litigation the Watts, Tice Defendants have failed to demonstrate that Plaintiff's claims should be dismissed. Therefore, the court will deny the motion to dismiss as to Counts XI and XII.

### F. Count XIII - Conversion

With respect to the conversion claim (Count XIII), the Watts, Tice Defendants contend that "[c]onversion is 'the exercise of any act of dominion in denial of another's title to the chattels or inconsistent with such title.'" Defs.' Mot. at 22 (quoting Lembaga Enters., Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J. Super. 501, 507 (App. Div. 1999)). "The elements of conversion are (1) 'the property and right to immediate possession thereof belong to the plaintiff' and (2) 'the wrongful act of interference with that right by the defendant.'" Id. (quoting First Nat'l Bank v. N. Jersey Trust Co., 18 N.J. Misc. 449, 452 (Sup. Ct. 1940) and also citing LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009)).

While Plaintiff alleges that "Defendants wrongfully exercised dominion and control over money and other personal property belonging to Plaintiff CCD," see Am. Compl.

¶ 206, the Watts, Tice Defendants maintain that such an allegation cannot plausibly apply to them.  See Defs.' Mot at 22–23; see also Defs.' Reply at 17–18 ("As was held by the court in Meisels v. Fox Rothschild LLP, 240 N.J. 286[, 305] (2020) in order to state a claim of conversion 'there must first be an assessment of whether defendant has independent dominion and control over the subject property, as that inquiry affects other requirements for this tort.'").  In response, Plaintiff merely states:

> Watts posits that one element of conversion is "the wrongful act of interference with that right by the defendant."  In a July 26, 2018 meeting Watts repudiated CCD's wastewater treatment capacity rights and even said that CCD ought to take this dispute to court. CCD was therefore unable to sell its capacity property rights to Clinton 94, LLC.  Thus, the court should reject Watts claim that, as a matter of law, he did not convert CCD's property.

Pl.'s Opp'n at 38–39 (emphasis added, internal citations omitted).   Unfortunately, Plaintiff's response that it adequately pled one element fails to address the other arguments raised by the Watts, Tice Defendants regarding the deficiencies in the conversion claim.  As they emphasize, "Plaintiff cannot, and does not, allege that the Watts, Tice Defendants somehow exercised independent dominion and control over its wastewater treatment capacity rights."  Defs.' Reply at 18.  Given that Plaintiff has failed to plausibly allege all of the elements of conversion against the Watts, Tice Defendants, the court will grant the motion to dismiss as to Count XIII.

### G. Count XIV – Unjust Enrichment

Defendants maintain that "[i]n order for a plaintiff to establish a claim of unjust enrichment he or she must 'show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'"  Defs.' Mot. at 23 (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).  Therefore, "the plaintiff must demonstrate that the 'defendant received a benefit and that retention of that benefit without payment would be unjust.'"  Id. (quoting Goldsmith v. Camden Cnty. Surrogate's Office, 408 N.J. Super. 376, 382 (App. Div. 2009), cert. denied, 200 N.J. 502 (2009)).

The Watts, Tice Defendants argue that Plaintiff's claim for unjust enrichment against them must fail as "there are no allegations in the First Amended Complaint that the Watts, Tice Defendants received some type of benefit, the retention of which would be unjust to Plaintiff."  Id. at 23–24.  To the contrary, Plaintiff contends that "CCD is entitled to learn through discovery what benefit would inure to attorney Defendants if they were permitted to abrogate Plaintiff's sewer rights."  Pl.'s Opp'n at 40.  It appears that Plaintiff concedes that it failed to allege what "enrichment" the Watts, Tice Defendants may have received as part of its claim, but nevertheless contends that through discovery Plaintiff may uncover evidence of such illicit enrichment that would justify preserving this claim.

The court agrees with the Watts, Tice Defendants that Plaintiff's unjust enrichment claim cannot go forward.  They point out that "[e]ven if Plaintiff could show that the Watts,

Tice Defendants received a benefit, the fact would remain that such proof would not support a claim of unjust enrichment because Plaintiff never performed or conferred a benefit on the Watts, Tice Defendants."  Defs.' Reply at 19.  Thus, granting all factual inferences in favor of Plaintiff, the court concludes that Plaintiff has not plausibly alleged that the Watts, Tice Defendants are liable for a claim of unjust enrichment.  Accordingly, the court will grant the motion to dismiss as to Count XIV.

### IV. Conclusion

For the foregoing reasons, the court grants in part and denies in part the Watts, Tice Defendants' motion to dismiss pursuant to Rule 12(b)(6).  Accordingly, it is hereby

**ORDERED** that the Watts, Tice Defendants' motion to dismiss this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part as to Counts XIII and XIV, and denied as to Counts I–IV and IX–XII; it is further

**ORDERED** that Plaintiff's Counts XIII and XIV against the Watts, Tice Defendants are dismissed; it is further

**ORDERED** that the Watts, Tice Defendants shall file their Answer to the Amended Complaint by July 23, 2024; and it is further

Court No. 3:19-cv-20525                                          Page 21

      **ORDERED** that the parties shall meet with the court on Wednesday, June 26, 2024

at 10:30 AM via videoconference to discuss next steps in the litigation.


                        /s/ Leo M. Gordon
                        Leo M. Gordon, Judge
                        U.S. Court of International Trade
                        (sitting by designation in the District of New Jersey)


Dated: June 17, 2024
        Newark, New Jersey