UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COUNTRY CLUB DRIVE ASSOCIATES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CLINTON TOWNSHIP SEWERAGE AUTHORITY; TOWNSHIP OF CLINTON; GREGORY WATTS, ESQ; WATTS, TICE & SKOWRONEK; NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL DISTRICT; NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION; MOTT MACDONALD, INC., <br><br> Defendants. | Before: Leo M. Gordon, Judge <br><br> Court No. 3:19-cv-20525 |

**OPINION and ORDER**

[Motion to dismiss for failure to state a claim denied.]

Dated: June 17, 2024

Daniel B. Tune, Tune Law Group, LLC, of Whitehouse Station, NJ argued for Plaintiff Country Club Drive Associates, LLC.

Joseph P. McNulty, Blick Law LLC, of Somerset, NJ argued for Defendant Mott Macdonald, Inc.  With him on the brief were James J. Ross and Brett M. Lederer.

Gordon, Judge[1]: In this action, Plaintiff Country Club Drive Associates, LLC ("CCD") brings claims against the township of Clinton ("Clinton"), its municipal sewer

---

[1] The Honorable Leo M. Gordon, Judge of the United States Court of International Trade, sitting by designation.

authority, Clinton Township Sewage Authority ("CTSA"), and various third parties involved with or having benefitted from the alleged taking of Plaintiff's rights to send 250,000 gallons per day ("GPD") of wastewater to a treatment facility in the neighboring town. See Amended Compl., ECF No. 43. Included among the third-party defendants is Mott Macdonald, Inc. ("MMD") that served as the wastewater engineering consultant for the CTSA during the period relevant to this litigation. Id. at ¶¶ 12–16.[2]

MMD moves to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. See MMD's Mot. To Dismiss, ECF No. 73 ("Def.'s Mot."); see also Pl.'s Opp'n to MMD's Mot. To Dismiss, ECF No. 81 ("Pl.'s Opp'n"); MMD's Mot. To Dismiss Reply, ECF No. 82 ("Def.'s Reply"). For the following reasons, MMD's motion to dismiss for failure to state a claim is denied.

**I. Background**

Clinton does not own a wastewater/sewage treatment plant. See Amended Compl. ¶ 22. Instead, since the 1970's Clinton has entered into agreements with the neighboring town for wastewater treatment services. Id. Various third parties, including Plaintiff, were independent owners of the right to send wastewater to the neighboring town's wastewater treatment facility. Id. Since at least 2007, CCD, Clinton, and the CTSA

---

[2] John S. Rolak, Jr. and Nancy C. Wohlleb were individual engineers employed by MMD, who were named in the amended complaint. In April 2023, Plaintiff agreed to dismiss its claims against Rolak and Wohlleb in their individual capacities and focus its claims solely against MMD. See Stipulation & Order, ECF No. 72 (dismissing claims against Mr. Rolak and Ms. Wohlleb without prejudice).

Court No. 3:19-cv-20525                                                                                    Page 3

have engaged each other in various legal actions in both state and federal court involving certain wastewater/sewage capacity rights conveyed to CCD in 1978 for the development of a condominium/multi-use development known as Beaver Brook.  See Def.'s Mot. at 1.  In this action, the most recent suit arising from this longstanding dispute, CCD advances 16 separate causes of action based on 134 paragraphs of allegations that crisscross over the 40-plus year history of the Beaver Brook development.  Id.  In February 2023, Plaintiff filed an amended complaint adding claims against MMD, among others[3].  See generally Amended Compl.  The amended complaint adds claims relating to alleged improper use of wastewater treatment capacity by the North Hunterdon Regional High School ("NHRHS"), as well as MMD's failure to properly account for and inform Plaintiff of NHRHS's unauthorized use of Plaintiff's wastewater/sewage capacity.  Id. at ¶¶ 42–97, 105–121.

      Plaintiff's original complaint contained 14 counts directed against the CTSA and Clinton.  See Initial Complaint, ECF No. 1.  The first four counts allege unlawful takings and seizures under the Federal and New Jersey state constitutions.  Id. at ¶¶ 151–168.  Plaintiff's fifth and sixth counts seek declaratory judgment that defendant government entities are acting unlawfully by "seizing" wastewater/sewage capacity owned by CCD without "just compensation."  Id. at ¶¶ 169–176.  CCD's seventh and eighth counts allege

---

[3] Plaintiff's amended complaint also alleged professional negligence and other claims against the CTSA's legal counsel.  See, e.g., Amended Compl. at ¶¶ 5–8.  Those claims, which are the subject of a different motion to dismiss, are addressed in a separate opinion.  See Opinion on Watts, Tice & Skowronek's Motion to Dismiss, ECF No. 104.

that those Defendants breached their contract (and implied covenant of good faith and fair dealing) with Plaintiff. Id. at ¶¶ 177–185. Beginning with the ninth count, Plaintiff's claims start to be generally alleged against "Defendants" and include broad allegations of liability. See id. at ¶¶ 186–189 (Count IX alleging "Defendants maliciously interfered with CCD's right to pursue its business with the public"); id. at ¶¶ 190–194 (Count X alleging that "Defendants owed fiduciary duties to CCD in light [of] the contracts between [the CTSA], [Clinton], and CCD," and that "Defendants breached said fiduciary duties"); id. at ¶¶ 195–200 (Count XI alleging fraud by Defendants); id. at ¶¶ 201–204 (Count XII alleging negligent misrepresentation as an alternative to fraud); id. at ¶¶ 205–208 (Count XIII alleging that "Defendants wrongfully exercised dominion and control over money and other personal property belonging to Plaintiff CCD"); id. at ¶¶ 209–211 (Count XIV alleging unjust enrichment against Defendants as an alternative to breach of contract claims).

Along with the various additional factual allegations added to the amended complaint, Plaintiff also alleged two additional new claims, Counts XV and XVI. Of particular relevance for the present motion is Count XV, in which Plaintiff alleges that MMD engaged in professional negligence and violated its duty of care to Plaintiff. Id. at ¶¶ 212–215. Lastly, in Count XVI, Plaintiff asserts a claim for "inverse condemnation" against the "government agency Defendants." Id. at ¶¶ 216–221.

## II. Standard of Review

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court assumes all factual allegations to be true and draws all reasonable inferences in the plaintiff's favor.  Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017).  A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 566 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555 (2007)).  Therefore, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Iqbal, 566 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

In addition to the complaint itself, the court may also review "exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim."  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d. Cir. 2004).  A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Court No. 3:19-cv-20525                                                                                         Page 6

### III. Discussion

As noted above, MMD was added to this action in February 2023 via Plaintiff's filing of an amended complaint. MMD moves to dismiss CCD's claims under Rule 12(b)(6), arguing that (1) any negligence claim against MMD in connection with its service as a consultant to the CTSA is time-barred by the applicable statute of limitations, (2) "CCD's claims against [MMD] are simply implausible," and finally (3) MMD did not owe Plaintiff any duty of care. See Def.'s Mot. at i, 12. MMD's motion appears to focus on defeating Plaintiff's newly added professional negligence claim (Count XV), with little, if any, attention to Plaintiff's other claims. See generally id. In its response, Plaintiff specifically emphasizes that it is not bringing claims only in negligence against MMD. See Pl.'s Opp'n at 32–35 (highlighting that "CCD's First Amended Complaint alleges far more than malpractice," and listing several claims and arguments "not requiring a negligence type of duty").[4] Nevertheless, in its reply MMD again only addresses its arguments towards Plaintiff's negligence claims. See generally Def.'s Reply (reiterating

---

[4] Specifically with respect to Counts I, II, III, and IV, Plaintiff argues that MMD "can be held liable as a state actor by personally participating in the taking and seizure of CCD's property." Id. at 33. With respect to Count IX, Plaintiff maintains that MMD "can be found to be liable for tortious interference with prospective economic advantage." Id. As for Count X, Plaintiff argues in the alternative that if MMD and CTSA "are considered the same, [MMD] can be held liable for breaches of fiduciary duties. If [MMD] and CTSA are not considered the same, MMD can be held liable for aiding and abetting CTSA's breaches of fiduciary duties." Id. Lastly, as to Count XI, Plaintiff contends that MMD could be liable for fraud if it can establish that MMD intentionally misled CCD. Id. As Defendant fails to directly address Plaintiff's counts beyond the professional negligence claim, the court need not reach these claims at this stage.

Court No. 3:19-cv-20525                                                                                    Page 7

arguments about the statute of limitations for negligence claims and lack of duty, but failing to address Plaintiff's other claims).

The court will therefore consider Defendant's motion to dismiss only with respect to Plaintiff's Count XV alleging professional negligence against MMD.  See Amended Compl. ¶¶ 212–215.  "To make a prima facie case for common law negligence in New Jersey, a plaintiff must plead four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages."  See E.S. v. Elizabeth Bd. of Ed., Civil Action No. 2:20-cv-01027, 2020 WL 7640537 at *4 (D.N.J. Dec. 23, 2020) (citing Townsend v. Pierre, 221 N.J. 36, 51 (2015)).  "A professional malpractice claim, such as the one involved here, accrues when '(1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice.'"  Vision Mortgage Corp. v. Patricia J. Chiapperini, Inc., 704 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1998), affd, 722 A.2d 527 (N.J. 1999) (citation omitted).

### A. Statute of Limitations

Defendant's response and primary defense is that Plaintiff's claim is time-barred by the applicable New Jersey six-year statute of limitations for professional negligence claims.  See Def.'s Mot. at 9–11 (citing N.J.S.A. 2A:14-1).[5]  Plaintiff does not dispute that

---

[5] Plaintiff notes that "courts rarely consider affirmative defenses on motions to dismiss," see Pl.'s Opp'n at 1; however, litigants in the Third Circuit are permitted to raise affirmative statute of limitations defenses in motions to dismiss if there is no dispute as to the timing of the claim.  See Zankel v. Temple Univ., 245 Fed. App'x 196, 198 (3d Cir. 2007) ("Although Rule 12(b) does not explicitly permit the assertion of a statute of limitations (footnote continued)

the six-year statute of limitations provided by N.J.S.A. 2A:14-1 applies to its claims here; however, Plaintiff does dispute the correct "discovery" date as to when the statute of limitations on its claim began to run. See Pl.'s Opp'n at 2–3 (highlighting MMD's alleged "concession" that "the statute of limitations is 6 years per N.J.S.A. 2A:14-1," and noting that "CCD pleaded discovery of the wrongs in 2018").

The discovery rule "tolls the limitations period until the plaintiff learns of [its] cause of action or with reasonable diligence could have done so" and "is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual regardless of whether or not the injured party has any idea what has happened to [it]." Stephens v. Clash, 796 F.3d 281, 284 (3d Cir. 2015). Simply stated, "the discovery rule means that the statute of limitations period begins to run as of the date of the [plaintiff's] discovery of the cause of action." Am. Bd. of Internal Med. v. Rushford, 841 F. App'x. 440, 443 (3d Cir. 2020).

A brief review of the underlying facts as alleged in the amended complaint and attached exhibits demonstrates that this claim is not suitable for dismissal at this early stage. MMD details that:

---

defense by a motion to dismiss, the so-called 'Third Circuit Rule' allows a defendant to assert a limitations defense in a Rule 12(b)(6) motion if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." (internal citations and quotation marks omitted)). However, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Robinson v. Johnson, 313 F.3d 128, 134–35 (3d Cir. 2002) (internal citation omitted).

> There is simply no basis in fact for CCD to allege it was not made aware that NHRHS wastewater flows were being factored into [MMD]'s sewage capacity models to calculate wastewater flow capacity for Beaver Brook in 2005. First, [MMD] issued a letter to the Authority dated April 6, 2005 copied to 'Bob Benbrook', one of the three members of CCD, enclosing Mott's model chart that expressly demonstrated that NHRHS' capacity was factored into the calculations of CCD's excess capacity. Moreover, in August 2005, [MMD] prepared a revised chart, using the same methodology as the April 2005 chart, calculating CCD's excess capacity to be 65,300 GPD. And, in both the April 2005 and August 2005 models, [MMD] reduced the 'Maximum Monthly Flow' attributable to the Beaver Brook development by subtracting the 'total flow' from NHRHS.

Def.'s Mot. at 10 (internal citations omitted). While Plaintiff argues that the documents Defendant relies on were not attached to the amended complaint and are therefore inappropriate to consider on a motion to dismiss, at least the letters that are the basis of Defendant's contentions were attached. See Pl.'s Opp'n at 8 n.2 ("Note that the charts upon [which MMD] relies are NOT attached to the Amended Complaint and thus [MMD] is going beyond the Amended Complaint."); but see Amended Compl. at Ex. 14 (attaching April and August 2005 letters as well as a November 2004 "Wastewater Flow Analysis" table).

While the attached chart does include references to "NHRHS," it is not clear from the face of Exhibit 14 that those documents support Defendant's position. See Amended Compl. at Ex. 14.

The fact that MMD's argument relies on the court drawing favorable factual inferences as to what CCD knew or should have known from these documents proves

fatal to MMD's motion.  See, e.g., Motamed v. Chubb Corp., Civ. No. 15-7562, 2016 WL 1029791 at *3 (D.N.J. 2016) ("Evaluating whether the terms of the policy contradict [Defendant]'s alleged misrepresentations goes to the heart of the merits of this case, and thus would not be appropriate for the Court to decide at this time.  Therefore, the date of the receipt of the policies will not trigger the beginning of the statute of limitations for purposes of [Defendant]'s Motion to Dismiss.  The Court will deny dismissal of the claims against [Defendant] on this basis.").  Defendant here has demonstrated that there is a significant factual question here as to when Plaintiff knew or reasonably should have known as to the existence of its negligence claim against MMD; however, drawing all reasonable factual inferences in Plaintiff's favor means that Defendant cannot meet the high bar to prevail on its motion to dismiss.

### B. Plausibility

Turning to Defendant's challenge to the plausibility of Plaintiff's claim, Defendant explains that "[a] claim is facially 'plausible' when it alleges sufficient factual content to permit the reasonable inference that the defendant is liable for unlawful conduct, thus giving rise to a 'reasonably founded hope that the discovery process will reveal relevant evidence' to support the claims."  Def.'s Mot. at 12 (citing Twombly, 550 U.S. at 559).  Defendant further acknowledges that "[d]etermining whether a claim crosses the 'plausibility' line is 'context-specific task' that draws on the deciding court's 'judicial experience and common sense.'"  Id. (citing Iqbal, 566 U.S. at 678).  For substantially the same reasons that the court rejected Defendant's statute of limitations argument, the

court does not accept Defendant's argument that Plaintiff's claim should be dismissed as "facially implausible." See Def.'s Mot at 12–14. Notably, Defendant appears to have recognized the futility of this line of argument, as it abandoned this "implausibility" argument in its reply. See generally Def.'s Reply. Accordingly, the court will not dismiss the claim on this basis.

### C. Duty of Care

Finally, Defendant maintains that even if the court cannot conclude that Plaintiff's claims were time-barred or implausible, the court should nevertheless determine that MMD "owed no duty to Plaintiff as a third-party beneficiary of Mott MacDonald's engineering work performed on behalf of the Township." Def.'s Mot. at 15. "The issue whether a defendant owes a legal duty is generally a question of law for the court to decide." Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997).

"Ultimately, the 'question of whether a duty exists in a particular case is a question of fairness and policy that implicates many factors.'" Grand Street Artists v. General Elec. Co., 19 F. Supp. 2d 242, 248 (D.N.J. 1998) (quoting Caravalho v. Toll Brothers and Developers, 143 N.J. 565, 572 (1996)). Under New Jersey law, the "determination of an existence of a duty… [involves] [a]n important, although not dispositive consideration, [of] the foreseeability of injury to others from the defendant's conduct. Also important are the nature of the risk posed by the defendant's conduct, the relationship of the parties, and the impact on the public of the imposition of a duty of care." Snyder v. American Ass'n of Blood Banks, 144 N.J. 269, 292 (1996) (citations omitted).

Court No. 3:19-cv-20525                                                                 Page 12

      Defendant contends that this matter is "akin to the facts giving rise to Rieder Communities v. North Brunswick Township, 227 N.J. Super. 214, 221–23 (App. Div. 1988)." See Def.'s Mot. at 15. Rieder involved a defendant design engineer who had contracted with a township for a sewer extension. Rieder, 227 N.J. Super. at 217. After delays in the project, land developers and builders sued the township for contract violations as well as the design engineer for professional negligence. Id. Following "an extended bench trial," the trial court dismissed the claim against the defendant engineer. Id. The appellate court affirmed the dismissal, noting that "while arguably [the defendant engineer] might have been under a duty to [the township] to have recommended that a study of the inflow-infiltration problems in the system be conducted, we do not perceive any such duty owing to plaintiffs." Id. at 226. Specifically, the court concluded that it was "satisfied that an objective viewing of the attendant facts, including the uncertainty as to the successful implementation of a recommended course of action directed toward overflow conditions in a sewerage system, would not lead a consulting engineer to reasonably foresee that the failure to make the claimed recommendations would create the risk of injury asserted by plaintiffs." Id.

      Defendant also relies on Neelthak Development Corp. v. Township of Gloucester, 272 N.J. Super. 319, 325 (App. Div. 1994) for the proposition that "[w]hen an engineer is employed by a town, their primary duty is owed to that entity, not to a person or entities who are subject to that authority." Def.'s Mot. at 16. In Neelthak, plaintiff developers brought an action against a township and engineering firm retained by the township

arising from allegedly unreasonable fees charged for application review and inspection services.  The trial court granted summary judgment for the township and engineering firm, and the appellate court affirmed the dismissal as to the engineering firm.  Neelthak, 272 N.J. Super. at 326.  As here, plaintiffs in Neelthak had conceded that "they could not prevail as third party beneficiaries of the Township's contract with [defendant engineering firm]."  Id., 272 N.J. Super. at 324.  "Instead, they have focused on a tort theory, i.e., that [defendant engineering firm] breached a duty of care owed to plaintiffs, citing Bacak v. Hogya, 4 N.J. 417, 422–23 (1950), as authority for the proposition that 'an independent contractor is liable to a third person injured as a result of the negligence of the independent contractor or his servants in the performance of his work for the contractee in an action based in tort, although such third person could not base his action upon the contract to which he was not a party.'"  Id., 272 N.J. Super. at 324–25.  Given that it had already determined that "plaintiffs' interests may be wholly vindicated in their cause of action against the Township," the appellate court found it "unnecessary to determine whether this principle of ordinary negligence law should be imported into situations involving a public entity in which the independent contractor has not engaged in conduct resulting in personal injury or property damage but rather has allegedly breached the duty of good faith compliance owed by contracting parties to each other with a resulting monetary cost to a third party who is in a position to recover against the contractee."  Id., 272 N.J. Super. at 325.

In light of this context, neither the affirmation of a post-trial dismissal in <u>Rieder</u> nor the affirmation of the grant of summary judgment in <u>Neelthak</u> justify granting Defendant's pre-trial motion to dismiss here.  While both <u>Neelthak</u> and <u>Rieder</u> may provide support the ultimate disposition of the issue on the merits, those cases do not demonstrate that it is appropriate to dismiss Plaintiff's claims at this early stage.  It is unclear to what extent those decisions were predicated on factual circumstances that were made clear in the summary judgment or trial context.

Plaintiff also responds by emphasizing its allegations that MMD was an agent of the CTSA and Clinton, with whom Plaintiff had entered a "public/private partnership."  <u>See</u> Pl.'s Opp'n at 20–22.  Plaintiff maintains that this unique "close relationship" distinguishes this matter from the cases relied upon by MMD.  <u>Id.</u> at 25–32.  Plaintiff instead relies on <u>People Exp. Airlines, Inc. v. Consolidated Rail Corp.</u>, 100 N.J. 246 (1985) ("<u>People Express</u>") and <u>Conforti & Eisele, Inc. v. John C. Morris Associates</u>, 199 N.J. Super. 498 (App. Div. 1985) ("<u>Conforti</u>") to support the conclusion that Plaintiff adequately alleged that MMD breached a duty of care that it owed to CCD.  <u>Id.</u> at 18–22, 26, 32.  In <u>Conforti</u>, the court considered the appeal after trial by a defendant subcontractor engineer found to be liable for professional negligence causing economic damages.  The appellate division affirmed the trial court's rejection of a motion to dismiss by defendant engineer predicated on a "lack of contractual privity."  <u>Conforti</u>, 199 N.J. Super. at 500.  Plaintiff maintains that its action against MMD here should be similarly allowed to proceed under the same logic.  <u>See</u> Pl.'s Opp'n at 18–22.

In People Express, the New Jersey Supreme Court addressed the question of "whether a defendant's negligent conduct that interferes with a plaintiff's business resulting in purely economic losses, unaccompanied by property damage or personal injury, is compensable in tort." People Express, 100 N.J. at 248. The court held that "a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty." Id. at 263.

Plaintiff maintains that due to its public/private partnership with the CTSA and MMD's admitted full awareness of Plaintiff's interests as a specially identified capacity owner, Plaintiff falls "within a readily identifiable class of parties affected by [MMD]'s capacity studies and reports." Pl.'s Opp'n at 21.[6] Thus, Plaintiff concludes that MMD owed CCD a duty under the principles of the cited case law. Id. at 22.

Ultimately, the court concludes that the legal question of whether MMD owed Plaintiff a duty of care depends on underlying factual concerns that may not be resolved at this early stage. While Defendant has raised significant questions signaling that New

---

[6] Defendant argues that it had no duty to CCD as a "third-party beneficiary." See Def.'s Mot at 16. Because Plaintiff expressly "accepts" that "CCD is not a third-party beneficiary under [MMD]'s contract with CTSA," see Pl.'s Opp'n at 19 n.10, the court need not reach this issue.

Court No. 3:19-cv-20525                                                                                                 Page 16

Jersey law may disfavor the imposition of duties owed to third-parties by engineers engaged in advising municipalities, Plaintiff has alleged a unique public/private partnership/arrangement between itself and the CTSA as well as the full knowledge and understanding by MMD as to the implications of that contractual partnership.  Accordingly, the court is not ready to conclude on the basis of the pleadings that MMD could not have plausibly owed a duty to CCD.  See Taylor by Taylor v. Cutler, 306 N.J. Super. 37, 42 (App. Div. 1997) ("In every case the inquiry [of whether a duty exists] is 'both fact-specific and principled,' and the result must 'lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.'" (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 438 (1993)).  It appears that the risk of harm to CCD resulting from MMD's alleged negligence was foreseeable here, but it is not clear whether the specific relationship between the parties and the interests of the public justify the imposition of a duty in these circumstances.  Therefore, the court will deny MMD's motion to dismiss Plaintiff's negligence claim at this stage but may reconsider this issue after further development of the factual record.

Court No. 3:19-cv-20525    Page 17

## IV. Conclusion

For the foregoing reasons, the court denies Defendant MMD's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, it is hereby

**ORDERED** that Defendant MMD's motion to dismiss this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied; it is further

**ORDERED** that Defendant MMD shall file its Answer to the Amended Complaint by July 23, 2024; and it is further

**ORDERED** that the parties shall meet with the court on Wednesday, June 26, 2024 at 10:30 AM via videoconference to discuss next steps in the litigation.

/s/ Leo M. Gordon
Leo M. Gordon, Judge
U.S. Court of International Trade
(sitting by designation in the District of New Jersey)

Dated: June 17, 2024
      Newark, New Jersey